UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


MICHAEL MELTON,

    Petitioner,

v.                                                                                    Case No. 2:09-cv-92
                                                                         HON. R. ALLAN EDGAR

HUGH WOLFENBARGER,

    Respondent.
_____/


## REPORT AND RECOMMENDATION

Petitioner Michael Melton filed this petition for writ of habeas corpus challenging the validity of his conviction for first-degree premeditated murder, MCL 750.316(1)(a), and habitual fourth offender, MCL 769.12. Petitioner was convicted and sentenced to life imprisonment. Petitioner maintains that his conviction was obtained in violation of his federal rights. The Michigan Court of Appeals summarized the facts of the case:

> On October 3, 2005, inside Camp Cusino, a level one corrections facility in Alger County, David Green was killed by a single stab wound to the chest, which penetrated his heart. Witnesses testified that Anderson and Melton went to Green's room, armed with shanks, to avenge an earlier assault on Anderson and that Green was stabbed during the ensuing scuffle. The jury convicted Anderson of second-degree murder; the jury convicted Melton of first-degree murder.

Michigan Court of Appeals' Opinion, Docket #24, at 1.

The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing

United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

> Petitioner has raised the following issues in his petition:
>
> I. Petitioner's due process rights were violated when he was made to appear in shackles during his trial.
>
> II. The prosecutor violated Petitioner's due process rights by repeatedly eliciting unfairly prejudicial testimony about Petitioner's membership in an Islamic prison group, and ineffective assistance of counsel for failing to object to this line of questioning.
>
> III. Trial counsel was constitutionally ineffective for failing to object to the prosecutor's impeachment of Petitioner with post-arrest, post-*Miranda* silence.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

       The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This

presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner first claims that his rights were violated when the jury observed Petitioner and defense witnesses in shackles during trial. The Michigan Court of Appeals rejected this claim explaining:

> This Court reviews a trial court's decision to restrain a defendant during trial for an abuse of discretion under the totality of the circumstances. *People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996). As this Court explained in *Dixon*,
>
>> Freedom from shackling is an important component of a fair trial. Consequently, the shackling of a defendant during trial is permitted only in extraordinary circumstances. Restraints should be permitted only to prevent the escape of the defendant, to prevent the defendant from injuring others in the courtroom, or to maintain an orderly trial. [*Id*. (citations omitted).]
>
> We agree that the trial court did not clearly articulate its reasoning for requiring that defendants remain shackled on the record before trial. However, the trial court's comments throughout the proceedings, including those made in ruling on defendants' post-trial motions, indicate that the trial court was concerned with maintaining security and ensuring an orderly trial, considering the nature and circumstances of this case, with a substantial number of inmate witnesses testifying against defendants, and considering the size and layout of the courtroom, which placed the witnesses, parties, public and jury in close proximity to one another. The trial court specifically alluded to the need for defendants to be segregated at their current placement and referenced information received from the Department of Corrections as impacting its decision. Moreover, all inmates - defendants and witnesses alike - were shackled throughout the trial, which clearly suggested that defendants were restrained for neutral

> security purposes and not because the trial court predetermined them guilty. Therefore, we conclude that the trial court did not abuse its discretion in ordering that defendants remain shackled during trial.
>
> Further, even were we to conclude otherwise, considering the overwhelming evidence presented against them and that the jury necessarily was aware that defendants were incarcerated at the time of the offense and at the time of trial, defendants cannot establish that they were prejudiced by the presence of the restraints. Therefore, reversal is not required. *People v Robinson*, 172 Mich App 650, 654; 432 NW2d 390 (1988).

Michigan Court of Appeals' Opinion, Docket #24, at 2.

To justify reversal based on the presence of shackles or restraints during trial, a petitioner is obligated to show prejudice when he claims that the jury observed him in shackles during trial. *United States v. Mayes*, 158 F.3d 1215, 1225 (11th Cir. 1998); *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (Juror's observation of defendant in shackles did not require reversal where defendant could show no actual prejudice). In this case, Petitioner cannot show that prejudice resulted from any juror viewing him in shackles. The jury was aware that Petitioner and the defense witnesses were prisoners at the time of the alleged crime and at the time of trial. In the opinion of the undersigned, Petitioner cannot show that the Michigan Court of Appeals' decision was unreasonable.

In his second claim Petitioner alleges that the prosecutor engaged in prosecutorial misconduct, depriving him of a fair trial, when the prosecutor introduced evidence of Petitioner's religious beliefs to attack Petitioner's credibility. The Michigan Court of Appeals reviewed the claim and found that no reversible error resulted from the prosecutor's conduct:

> A prosecutor is not permitted to introduce evidence relating to the religious beliefs of a witness to attack the witness's credibility. MRE 610; *People v Leshaj*, 249 Mich App 417, 420-421; 641 NW2d (2002). Thus, "questioning a witness with regard to the subject of his religious beliefs or opinion is forbidden during a criminal proceeding . . . . Likewise,

- 5 -

> questioning a witness to explore another individual's religious opinions and beliefs is equally offensive." *People v Leonard*, 224 Mich App 569, 594-595; 569 NW2d 663 (1997).
>
> Here, the prosecutor did not question Melton about his religious beliefs, question other witnesses about Melton's religious beliefs, or in any way suggest that those beliefs rendered Melton less credible. In fact, the prosecutor made no inquiry whatsoever into the nature, substance, or effect of Melton's religious beliefs or the beliefs espoused by members of the Mobites. Rather, she merely sought to establish that Melton was a member of the Mobites and that the Mobites operated as a gang at Camp Cusino, protecting members and others from conflict, so as to explain Melton's motive in accompanying Anderson to avenge Green's earlier assault on Anderson, which did not involve Melton in any way, and to explain why some inmates declined to cooperate with detectives investigating Green's murder. Reversal is not warranted where the testimony elicited does not "reveal a defendant's opinion or belief regarding the subject of religion." *Id*. at 595. And, a prosecutor's good faith effort to admit evidence does not constitute prosecutorial misconduct. *Dobek*, *supra* at 70.

Michigan Court of Appeals' Opinion, Docket #24, at 11.

Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied Petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), cert. denied, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

In this instant case, the Michigan Court of Appeals' analysis is reasonable. Petitioner has not shown that the prosecutor's questioning, focusing on whether the supposedly religious group Mobites, or Moorish Americans, also operated like a prison gang, unfairly prejudiced him. The Michigan Court of Appeals evaluated Petitioner's claim and concluded that any error by the prosecution was not prejudicial to Petitioner and did not result in the conviction of someone who was innocent of the crime. Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

Finally, Petitioner alleges ineffective assistance of counsel. Petitioner claims that his counsel failed to object to the prosecutor's questions about Petitioner's membership in an Islamic prison group and failed to object to the prosecutor's impeachment of Petitioner with post-arrest, post-*Miranda* silence. The Michigan Court of Appeals rejected the claims stating:

> Melton asserts that his trial counsel was ineffective for failing to object to the prosecutor's question and comment regarding Melton's failure to provide the exculpatory version of events he testified to at trial to detectives when first interviewed by them following Green's murder. We disagree.
>
> The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).
>
> To establish a claim of ineffective assistance, Melton must show that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms, that but for his counsel's errors, there is a reasonable probability that the results of his trial would have been different, and that the proceedings were fundamentally unfair or unreliable. *People v Toma*, 462 Mich 281, 302-303; 613 N.W.2d 694 (2000); *People v Rodgers*, 248 Mich App 702, 714; 645 N.W.2d 294 (2001). To establish that his counsel's performance was deficient, Melton "must overcome the strong presumption that his

counsel's action constituted sound trial strategy under the circumstances." *Toma, supra* at 302. As noted above, counsel is not ineffective for failing to make a meritless argument or raise a futile objection. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004); *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

During her cross-examination of Melton, the prosecutor inquired as to why Melton had not told his exculpatory version of events to detectives when first questioned by them. Later, during closing argument, the prosecutor commented that Melton "didn't tell this tall tale to detectives at that time because he hadn't thought of it yet." Melton's counsel did not object to either the prosecutor's question or her comment during closing argument.

While a prosecutor may argue from the facts that the defendant is not worthy of belief, *Howard, supra* at 548; *Launsburry, supra* at 361, a prosecutor may not comment on a defendant's post-arrest, post-*Miranda* silence. *Doyle v Ohio*, 426 US 610, 619-620; 96 S Ct 2240; 49 L Ed 2d 91 (1976); *People v. Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). That said, however, a defendant may be impeached by his prior failure to state a fact in circumstances in which that fact naturally would have been asserted. *Goodin, supra*; *People v. Alexander*, 188 Mich App 96, 103; 469 NW2d 10 (1991). And, a prosecutor may fairly comment on a defendant's opportunity to fabricate testimony after hearing the witnesses against him. *Portuondo v Agard*, 529 US 61, 73; 120 S Ct 1119; 146 L Ed 2d 47 (2000) ("A witness's ability to hear prior testimony and to tailor his account accordingly, and the threat that ability presents to the integrity of the trial, are no different when it is the defendant doing the listening. Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate - and indeed, given the inability to sequester the defendant, sometimes essential - to the central function of the trial, which is to discover the truth."). See also, *Jenkins v Anderson*, 447 US 231, 238; 100 S Ct 2124; 65 L Ed 2d 86 (1980) ("[I]impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility.")

Melton asserts that the prosecutor's question and comment, fairly taken, refers to both pre-*Miranda* and post-*Miranda* silence in violation of his constitutional rights, and that his counsel was ineffective for failing to object. This Court granted Melton's motion to remand to determine why trial counsel did not object to the prosecutor's question and argument pertaining to Melton's silence. At the subsequent hearing, Melton's trial

counsel acknowledged that he was aware that Melton had asserted his right to remain silent when questioned by detectives. Counsel explained that he expected the prosecutor to argue that Melton had the opportunity to conform his testimony to the facts presented at trial and that it was appropriate for her to do so. Counsel also indicated that he "absolutely" understood that comment on post-*Miranda* silence was impermissible, but did not interpret the prosecutor's question and comment as pertaining to Melton's post-*Miranda* silence. Counsel agreed that the question was asked, and the comment was made, in a context relating to Melton's opportunity to conform his testimony to the evidence presented at trial.

The trial court concluded that Melton had not established that his trial counsel was ineffective, considering the prosecutor's single question regarding a pre-arrest, pre-*Miranda* inquiry by detectives of Melton and single comment during closing argument, coupled with Melton's trial counsel's recognition and understanding of the line of questioning, and the overwhelming evidence presented against Melton at trial, including but not limited to eyewitness accounts of Melton's role in Green's murder and the presence of Melton's DNA on a weapon found in close proximity to the scene.

We agree that with the trial court that defense counsel fairly understood in context that the prosecutor's question and comment were not directed toward Melton's post-arrest, post-*Miranda* silence, but instead toward establishing that Melton did not tell detectives his exculpatory version of [events] when first approached by them, when it would have been natural for him to have done so, and that he only developed his version of after listening to all of the witnesses testify at trial. On this basis, Melton's assertion that the prosecutor's question and comment were constitutionally infirm lacks merit. As a result, Melton cannot establish that his counsel was ineffective for failing to object to it. *Matuszak, supra* at 58; *Snider, supra* at 425.

Further, considering the evidence against Melton and the very limited nature of the single question and comment of which he complains, Melton cannot establish that any decision by his counsel not to object to the prosecutor's question or comment affected the outcome of his trial. *Toma, supra* at 302-303. As noted by the trial court, the evidence against Melton, including eyewitness testimony that Melton stabbed Green in the chest, together with the presence of Melton's DNA on the shanks found after the assault, was overwhelming. There is no indication that defense counsel's decision not to object to the prosecutor's single question and comment on Melton's silence, even if impermissible, affected the outcome of the trial.

- 9 -

>Melton also argues that his trial counsel was ineffective for failing to object to the prosecutor's references to the Mobites as a gang at trial. However, because those references were permissible, Melton's counsel was not ineffective for failing to object to them. *Matuszak, supra; Snider, supra*.

Michigan Court of Appeals' Opinion, Docket #24, at 12-14.

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), cert. denied, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), cert. denied, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; Austin, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable

professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

In this instant case, Petitioner has failed to prove that trial counsel's errors were so severe as to constitute constitutional ineffectiveness. Petitioner has not shown that but for his trial counsel's failure to object to the prosecutor's questions and closing statement, there was a reasonable probability that the result at trial would have been different. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner has failed to establish that there was insufficient evidence presented at trial to support his conviction. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2011